UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------X
ONSITE 340B, LLC,                                               :
                                                                :
                              Plaintiff,     :   Civil Action No. 18-cv-596-JS
                                                                :
               v.                                        :
340BASICS, INC.,                                                :
                                                                :
                            Defendant.     :
---------------------------------------------------------------X

## SETTLEMENT AND CONSENT ORDER

The parties hereby stipulate and agree to the following consent order:

1. Plaintiff Onsite 340B, LLC's ("Onsite") brought this action for injunctive relief and ancillary damages arising from alleged breach by defendant 340Basics, Inc. ("340Basics") of a Mutual Confidentiality and Non-Disclosure agreement ("Agreement") signed on November 28, 2017, a true copy of which is attached in Exhibit 1, arising out of 340Basics' hiring of Onsite's former employee, Ms. Jennifer O'Neill.

2. On February 14, 2018, upon consideration of Onsite's application for a preliminary injunction and temporary restraining order pursuant to Fed. R. Civ. P. 65 against 340Basics, the allegations of which 340Basics denied, the Court issued a Temporary Restraining Order ("TRO") pending a preliminary injunction hearing scheduled for March 12, 2018, which was to take effect only upon Onsite's posting of a $100,000 bond. Onsite did not post the bond, and the TRO never went into effect.

3. Thereafter, the parties entered into settlement discussions and reached an agreement, the terms of which are set forth herein.

4. This Settlement and Consent Order binds Onsite and 340Basics and each of their respective subsidiaries and affiliates.

5. For purposes of this Settlement and Consent Order, "Confidential Information" has the same definition (and is subject to the same exceptions) as used in the Agreement attached as Exhibit 1.

6. Onsite hereby fully and finally releases 340Basics and Ms. O'Neill of any and all liability preceding, arising out of, or otherwise connected to its hiring of Ms. O'Neill, and waives any objection to 340Basics' continued employment of Ms. O'Neill, subject to the provisions of this Settlement and Consent Order. 340Basics shall not discuss with Ms. O'Neill any Confidential Information of Onsite. 340Basics shall have Ms. O'Neill execute a separate confidentiality agreement in the form attached as Exhibit 2.

7. 340Basics shall not use any Confidential Information actually received from Onsite under the Agreement for any purpose whatsoever.

8. 340Basics shall not participate in or conduct any "Dispensary Business," as that term is defined in this Settlement and Consent Order within the United States for two years from February 12, 2018 (the "Restriction Period").

9. For purposes of this Settlement and Consent Order, Dispensary Business shall mean only a physician-based dispensary selling drugs to its patients (i.e., "closed-door") and functioning within a federally qualified health center (FQHC) pursuant to Section 340B of the federal Public Health Service Act ("Section 340B").

10. Nothing in this Settlement and Consent Order shall prevent 340Basics from being acquired or otherwise entering into a bona fide corporate transaction with a company operating a Dispensary Business as defined in this Settlement and Consent Order, and nothing herein shall restrict the business of the acquiring or combined company. In the event of such a transaction, 340Basics (including Ms. O'Neill, to the extent still employed by 340Basics) will not use or

disclose to that acquiring company any Confidential Information actually received from Onsite under the Agreement. 340Basics represents and warrants that it is not currently in active negotiations with any potential acquirer, nor it is aware of any other company actively interested or intending to acquiring 340Basics.

11. This Settlement and Consent Order shall be governed by the laws of the Commonwealth of Pennsylvania without regard without reference to its principles of conflicts of law.

12. Upon approval by the court of this Settlement and Consent Order, Onsite shall dismiss the complaint in this matter with prejudice against 340Basics.

13. The court will maintain jurisdiction over this matter for purposes of resolving any dispute concerning the interpretation and enforcement of the terms of the Settlement and Consent Order without the need to file any further lawsuit. The parties submit to this court's personal and subject matter jurisdiction and agree not to raise any objection on that basis to any future proceeding seeking to enforce the terms of the Settlement and Consent Order. In any future enforcement action, the prevailing party shall be entitled to be reimbursed for all reasonable costs incurred, including without limitation, reasonable attorney fees. The parties agree that any future proceeding to enforce the terms of this Settlement and Consent Order shall be heard and determined by the court without a jury, and all parties waive their right to any jury trial.

14. The parties are represented by counsel and had the full opportunity to seek advice regarding the terms of this Settlement and Consent Order before agreeing to its terms.

15. The persons signing on behalf of the parties have the full authority to sign on their behalf and bind the parties.

| | |
|---|---|
| ONSITE 340B, LLC | 340BASICS, INC. |
| *(signature)* | *(signature)* |
| Catherine Martin, CEO | Colleen DeClaudio, President |
| February    , 2018 | February    , 2018 |
| | |
| SPECTOR GADON & ROSEN, P.C. | LEVAN LEGAL LLC |
| *(signature)* | *(signature)* |
| Daniel J. Dugan, Esquire | Jon-Jorge Aras, Esquire |
| 1635 Market Street, 7th Floor | Two Bala Plaza, Suite 300 |
| Philadelphia, PA, 19103 | Bala Cynwyd, PA 19004 |
| 215.241.8888/ 215.531.9120 | 484.431.0250 |
| ddugan@lawsgr.com | jjaras@levan.legal |
| *Attorneys for Onsite 340B, LLC* | *Attorneys for 340Basics, Inc.* |

The court approves and enters the foregoing as a Consent Order of this court this 6th day of February, 2018.

*(signature)*
United State District Judge

# EXHIBIT 1

2666140-1

## MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (the "Agreement") is made this <u>  28th  </u> day of November, 2017, by and between ONSITE 340B, LLC, and <u>340Basics               </u>.

The parties hereto desire to evaluate a possible transaction (the "Transaction") with one another. To that end, either party (such party, the "Disclosing Party") may provide to the other (such party, the "Recipient") certain proprietary, non-public, confidential information concerning Disclosing Party, including but not limited to, information relating to Disclosing Party's business, technology, products and services, including Disclosing Party's strategic or marketing methods, plans and efforts; trade secrets; financial or personnel matters; the identities of and the course of dealing with actual and prospective clients, customers, suppliers, employees or investors of Disclosing Party; and any other materials or information relating to Disclosing Party that have not been made available to the general public, whether tangible or intangible, or in written, oral, electronic or graphic form (collectively "Confidential Information"). The failure by Disclosing Party to mark or identify any Confidential Information as such will not affect its status as Confidential Information.

Therefore, in consideration of these premises and the benefits to be derived from the Transaction, the parties, intending to be legally bound, hereby agree as follows:

1. Recipient (a) will use Confidential Information solely for the purpose of evaluating the Transaction with Disclosing Party and (b) will maintain in confidence all Confidential Information and shall take all reasonable precautions to ensure that Confidential Information is not disclosed or disseminated to any other persons or entities or published or reproduced, including at least those precautions that it utilizes to protect its own confidential information. Recipient may disclose Confidential Information to its advisors, attorneys, accountants and agents (collectively, the "Representatives"), provided that: (i) disclosure of the Confidential Information to a particular Representative is limited to those Representatives who are actively and directly participating in its evaluation of the Transaction or who otherwise need to know the Confidential Information for the purpose of evaluating the Transaction; and (ii) Recipient informs such Representative of the confidential nature of the Confidential Information and such Representative agrees to observe the restrictions imposed on Recipient by this Agreement. A breach of this Agreement by a Representative or the failure of a Representative to comply with the obligations of Recipient hereunder shall be deemed to be a breach of this Agreement by Recipient.

2. Upon expiration or termination of this Agreement, or earlier if at any time Disclosing Party so requests, Recipient promptly shall: (a) discontinue any use of Confidential Information; (b) at Disclosing Party's instruction either deliver to Disclosing Party all materials that contain Confidential Information or information derived therefrom in its possession or in the possession of any Representative or erase or destroy any Confidential Information or information derived therefrom in its possession or in the possession of any Representative; and (c) warrant in writing to Disclosing Party that Recipient has taken all actions described in the foregoing clauses.

3. This Agreement shall not apply to Confidential Information that: (a) at the time of disclosure by Disclosing Party is, or after disclosure by Disclosing Party becomes, generally available to the public through no improper act on the part of Recipient or any of its Representatives; (b) was in Recipient's possession or was otherwise available to or known to Recipient at the time of disclosure by Disclosing Party, as evidenced by Recipient's written records, and was not acquired, directly or indirectly, from Disclosing Party; or (c) Recipient receives from a third party, provided that such Confidential Information was not obtained by such third party, directly or indirectly, from Disclosing Party in violation of any confidentiality obligation to Disclosing Party.

4.  Confidential Information has been and will be provided to Recipient by Disclosing Party with the express understanding that neither party hereto is obligated to enter into any further agreement with respect to the Transaction by virtue of this Agreement. In addition, nothing in this Agreement shall be construed as granting or conferring any rights by license or otherwise to Recipient in the Confidential Information, other than the limited right to use such Confidential Information in accordance with the terms of this Agreement.

5.  Nothing in this Agreement shall be interpreted or construed as establishing a Recipient as an agent, employee or representative of the Disclosing Party.

6.  The parties hereto acknowledge that it is impossible to measure fully, in money, the injury that will be caused in the event of a breach or threatened breach of any of the provisions of this Agreement, and Recipient waives the claim or defense that the other party has an adequate remedy at law. Recipient shall not, in any action or proceeding to enforce the provisions of this Agreement, assert the claim or defense that such a remedy at law exists. Recipient shall be entitled to seek injunctive relief to enforce the provisions of this Agreement, without prejudice to any other remedy that Recipient may have at law or in equity, and the prevailing party in any such litigation shall be entitled to recover all reasonable expenses of litigation, including reasonable attorneys' fees.

7.  This Agreement and the rights and obligations of the parties hereunder shall be governed by the laws of the Commonwealth of Pennsylvania, notwithstanding any conflict-of-law doctrines of the Commonwealth of Pennsylvania or any other jurisdiction to the contrary.

8.  This Agreement contains the entire agreement and understanding of the parties relating to the subject matter hereof and merges and supersedes all prior discussions, agreements and understandings of every nature between them. This Agreement may not be changed or modified, except by a written agreement signed by both of the parties hereto. None of the provisions of this Agreement shall be deemed to have been waived by any act or acquiescence on the part of Disclosing Party or Recipient, but only by an instrument in writing signed by both of the parties hereto.

9.  If any provision of this Agreement is later determined to be void, invalid or unenforceable for any reason, such provision shall be deemed amended to delete therefrom the portion thus adjudicated to be void, invalid or unenforceable, such amendment to apply only to the operation of such provision in the particular jurisdiction in which such adjudication is made, and the validity and enforceability of all of the remaining provisions of this agreement shall not be affected.

10. This Agreement shall be binding upon and shall inure to the benefit of each party's respective successors and assigns. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument notwithstanding that all parties are not signatories to each counterpart.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties have caused this MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT to be executed on the day and year first above written.

| ONSITE 340B, LLC | 340Basics |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Kate Martin | Name: Colleen DiClaudio |
| Title: CEO | Title: President |

# EXHIBIT 2

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement is made this ____ day of February 2018 between Jennifer O'Neill ("O'Neill") and Onsite 340B, LLC ("Onsite").

### Background

A. Ms. O'Neill was an employee of Onsite until February 11, 2018.

B. On February 12, 2018, Ms. O'Neill began to be employed by 340Basics, Inc. ("340Basics").

C. Onsite sued 340Basics alleging, *inter alia,* that 340Basics' hiring of O'Neill violated the terms of a certain mutual confidentiality and non-disclosure agreement executed between Onsite and 340Basics on November 28, 2017 (the "340Basics Agreement"), which allegations 340Basics denied.

D. Onsite and 340Basics have settled their dispute, based in part on execution by O'Neill of this Confidentiality Agreement.

E. O'Neill is willing and able to enter into this Confidentiality Agreement and abide by its terms.

F. Unless otherwise specified, "Confidential Information" has the same meaning and is subject to the same exceptions as set forth in the 340Basics Agreement, attached as Exhibit A hereto.

G. By virtue of her employment, O'Neill possesses Confidential Information of Onsite.

NOW THEREFORE, in consideration of the mutual promises made herein, and intending to be legally bound, the parties agree as follows:

1. The paragraphs set forth under Background above are true and correct and made a part of this Confidentiality Agreement.

2. Onsite hereby releases O'Neill from any and all claims it might have arising out of her employment with 340Basics.

3. O'Neill shall not disclose or discuss any Confidential Information of Onsite in her possession to or with any agent, employee, or representative of 340Basics, any of its affiliated companies, any successor company or any company that might subsequently acquire 340Basics at any time.

4.   The parties recognize the importance of Confidential Information, and agree that a breach of this agreement will constitute irreparable harm to Onsite. The parties agree that a material breach by O'Neill will entitle Onsite to suitable temporary, preliminary and/or permanent injunctive relief (as determined by the Court), without the need to post a bond. O'Neill agrees to submit to the jurisdiction of the District Court for the Eastern District of Pennsylvania (the "Court") in the event of any dispute arising out of this Confidentiality Agreement, and to refrain from raising any objection to the Court's jurisdiction in the event Onsite seeks relief from the Court without commencing a separate lawsuit.

5.   This Confidentiality Agreement will be governed by the laws of the Commonwealth of Pennsylvania without reference to its principles of conflicts of law.

6.   O'Neill has been given the full opportunity to review the provisions of the Settlement and Consent Order and to consult with an attorney of her choosing and to ask questions about this Confidentiality Agreement before signing. She signs this Confidentiality Agreement freely and with no reservations.

7.   The parties may sign this Confidentiality Agreement in counterparts with all signature pages constituting the entire agreement. Signatures transmitted electronically or by fax shall be considered original signatures.

IN WITNESS WHEREOF, the parties sign this Confidentiality Agreement as of the date first written above.

ONSITE 340B, LLC


_____          _____
Catherine Martin, CEO                Jennifer O'Neill